OTTO J. CIANCIOTTO AND RUTH CIANCIOTTO, HIS WIFE,
PLAINTIFFS-RESPONDENTS, v. SIDNEY MILSTEIN AND
MAYOR AND COUNCIL OF THE BOROUGH OF CLOS-
TER, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted January 7, 1975—Decided January 21, 1975.

Before Judges MATTHEWS, FRITZ and BOTTER.

*Messrs. Andora, Palmisano & De Cotiis* for appellants (*Mr. Anthony D. Andora,* of counsel).

*Mr. Edward J. Cahill* for respondents.

The opinion of the court was delivered by

MATTHEWS, J. A. D. Plaintiffs, residents and taxpayers of the Borough of Closter, Bergen County, instituted this action in lieu of prerogative writs seeking to set aside the appointment of defendant Milstein as a member of the Borough governing body. The Law Division Judge, after considering the pleadings and affidavits filed and oral argument, concluded, as a matter of law, that Milstein's appointment was invalid and entered summary judgment in favor of plaintiffs. This appeal followed.

On application of defendants, we stayed the judgment of the trial court and, because of the public nature of the question involved, we have, at the request and with the consent of all parties, accelerated the appeal and proceed to a determination of the merits on the record below and the briefs filed with us.

The Borough of Closter is organized under the provisions of the "Borough Act," Subtitle 6 of Title 40 of the Revised Statutes, *N. J. S. A.* 40:86–1 through 40:94–6. The act provides that each Borough created thereunder is to be governed by elective officers consisting of a mayor and six councilmen. *N. J. S. A.* 40:87–1.

On Novmeber 20, 1974, a regular meeting of the governing body of the Borough of Closter was convened for the transaction of business. Present were three of the six elected councilmen and the mayor. This attendance constituted a quorum for the transaction of business. *N. J. S. A.* 40:88–1. During the meeting a letter of resignation' from the office of councilman was received from Councilman Brown and read into the record of the meeting. Thereupon,

a resolution accepting the resolution was offered, seconded and adopted by the three council members in attendance.

The mayor then submitted the name of defendant Milstein to fill the vacant council seat. The nomination was moved for confirmation by one of the council members and seconded. A roll call vote resulted in two votes for the appointment and one against. Thereupon, the mayor cast his vote in favor of the nomination. Milstein's nomination was immediately declared confirmed, and he was administered the oath of office, and thereafter participated in the meeting as a councilman.

The trial judge concluded that the filling of a vacancy in the office of councilman under the borough form of government was governed by the provisions of *N. J. S. A.* 40: 87–12, and that since under that statute the mayor may only vote to break a tie council vote on an appointment to fill a vacancy, his vote in this instance was a nullity.

Defendants argue that the trial judge ignored the provisions of *N. J. S. A.* 40A:9–132 in reaching his decision. They contend that this statute impliedly repeals so much of *N. J. S. A.* 40:87–12 as would limit the mayor's right to vote in cases where there is a tie. *N. J. S. A.* 40A:9–132 reads:

In every municipality, unless otherwise provided by law, if the governing body shall fail (a) to organize and elect a president or chairman at its annual meeting held for such purpose, (b) to fill any vacancy in office or position, (c) to adopt any resolution or ordinance, or (d) to take any action whatsoever, by reason of a tie or insufficient vote among the members, the mayor shall vote in aid of said organization, the election of candidates, appointments of officers or others, adoption of resolutions or ordinances or the taking of any other action.

We fail to see how this statute can be controlling. Section 132 specifically provides that it should apply in all cases "unless otherwise provided by law." The Legislature has in fact provided otherwise by law, and has done so by the provisions of *N. J. S. A.* 40:87–12 which provides:

All vacancies in other elective offices shall be filled by nomination by the mayor and appointment by him by and with the advice and consent of the council, expressed by the vote of a majority of the members of the council present at the meeting; *provided that at least three affirmative votes shall be required for such purpose, the mayor to have no vote thereon except in the case of a tie.* [Emphasis added]

This section, in our view, provides specifically for the procedures to be followed to fill a vacancy on the council. It is not unreasonable for the Legislature to prevent a mayor from voting in favor of his own nominee, except in case of a tie vote, so as to assure joint action by the mayor, who nominates the candidate for the office, and the council members who must concur in such nomination.

Defendants' argument would have us permit use of the statute to support political maneuvering. In the instant case, the letter of resignation submitted by the councilman was fortuitously received at a meeting at which only three councilmen were present. In fact, there were six elected councilmen at the time. We are informed by counsel that the six councilmen existing at the time were evenly divided as to political persuasion. The use of the mayor's vote to make up the insufficiency in votes was thus somewhat artificially contrived. The mayor's vote would not have been necessary had all of the councilmen been present at the meeting.

We cannot agree that the Legislature adopted the provisions of *N. J. S. A.* 40A:9–132 to cover such circumstances. The use of the phrase, "unless otherwise provided by law," is clearly intended to continue the application of the statute designed expressly to cover the filling of council vacancies in boroughs, and those provisions must be given continued effect where possible. See *N. J. S. A.* 40A:1–5. We may not ignore this phrase in *N. J. S. A.* 40A:9–132 any more than we can avoid the identical phrase, "unless otherwise provided by law," in other sections of Chapter 9, such as *N. J. S. A.* 40A:9–130 which fixes the mayor's term at four years, "unless otherwise provided by law." *N. J. S. A* 4.0:125–4 and *N. J. S. A.* 40:132–1 do provide

otherwise, namely, that the mayor of a town shall hold office for a term of two years.

Defendants now argue that the effect of the trial judge's ruling was to exclude boroughs completely from the provisions of *N. J. S. A.* 40A:9–132. They point, for example, to the provisions of *N. J. S. A.* 40:88–1 in support of this contention. That issue is not before us since the question involved is one concerning the appointment of an individual to fill a council vacancy. That procedure, we hold, is specifically governed by the provisions of *N. J. S. A.* 40:87–12, above, and therefore its terms specifically exclude boroughs in that instance from the operation of *N. J. S. A.* 40A:9–132. We express no view as to whether the provisions of section 132 can apply to boroughs in any instance.

The judgment of the Law Division is affirmed.

FRITZ, J. A. D. (dissenting). I respectfully dissent from the opinion of my brethren and the judgment of the trial court.

In my judgment, *N. J. S. A.* 40:87–12 and 40A:9–132, when read *in pari materia* as they must be (*In re Petition of Walter C. Keogh-Dwyer*, 106 *N. J. Super*. 567 (Law Div. 1969), aff'd o. b. 54 *N. J.* 523 (1969)), are not repugnant but complementary. Indeed the latter does not repeal the former but supplements it.

*N. J. S. A.* 40:87–12 provides for the filling of vacancies in borough government. The mayor having the power of nomination is prohibited the vote except in the case of a tie. It is apparent that this statute is designed to provide a method for filling vacancies. On the other hand, *N. J. S. A.* 40A:9–132, applicable by its terms to all municipalities, instructs as to the procedure to be followed when, for some reason or another, a municipality fails to accomplish its purpose of filling a vacancy. In such a case, it is *required* that the mayor vote in order that government may not be stalemated by an inability to fill the seats at the governing table.

I am moved to take this road by at least three signposts: (1) the foregoing rationale, which demonstrates a legislative awareness of the importance of municipal organization irrespective of all else, in order that government may not be simply frustrated; (2) the concluding phrase of Section 40A:9-132 wherein Items (a), (c) and (d) of that Section are merely paraphrased but wherein Item (b) is indeed expanded to include both election and appointments; (3) the fact that even *N. J. S. A.* 40:87-12 does not absolutely prohibit the vote of the mayor but restricts it to cases of a tie.

I am frank to express my concern for the grave results which are foreseeable consequent to any inability of a municipal government to organize fully. In my opinion the interpretation sponsored by the majority here might well unwittingly foster the production of such a result by simple inaction. I think the Legislature foresaw such a possibility in *N. J. S. A.* 40A:9-132, and I would implement its intent in this regard by reversing the judgment below and declaring Milstein properly appointed.